# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

UNITED STATES OF AMERICA                    CRIMINAL NO. 17-0173-04

VERSUS                                      JUDGE ELIZABETH E. FOOTE

LONNIE D. JOHNSON (04)                      MAGISTRATE JUDGE HORNSBY

## MEMORANDUM RULING

Before the Court is a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 filed by Petitioner Lonnie D. Johnson ("Johnson"). Record Document 629. Johnson argues he is entitled to relief based on ineffective assistance of counsel during his pretrial, trial, and appellate proceedings because of counsel's alleged failures to: file motions to suppress; adequately prepare for trial and/or request a continuance; consult with Johnson; conduct adequate investigation and discovery by failing to interview or investigate witnesses, hire an investigator, or call witnesses; conduct effective cross-examinations; raise a potential conflict of interest; challenge a witness's in- and out-of-court identifications; request a recusal; raise claims of prosecutorial misconduct; and effectively represent Johnson on appeal. Record Documents 629 & 663. The Government opposes the § 2255 motion and contends Johnson is not entitled to any relief. Record Document 654.

For the reasons set forth below, Johnson's motion to vacate, set aside, or correct sentence [Record Document 629] is **DENIED** and **DISMISSED WITH PREJUDICE**. Johnson's motion to expedite consideration of his motion [Record Document 688] is **DENIED AS MOOT**.

## **Background**

On June 29, 2017, Johnson and several co-defendants were named in an eighteen-count indictment. Johnson was charged with: (1) racketeer influenced and corrupt organizations ("RICO") conspiracy, in violation of 18 U.S.C. § 1962(d); (2) conspiracy to possess firearms, in violation of 18 U.S.C. § 924(o); (3) violent crime in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(3); (4) using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c); (5) violent crime in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(3) and (2); and (6) using and carrying of firearms during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c) and (2). Record Document 1. In September 2018, the Government dismissed all counts against Johnson except for the RICO conspiracy charge. Record Documents 289 & 292.

The facts underlying Johnsons' RICO conspiracy charge involve a group Johnson was affiliated with called the "Block Boyz." Record Document 1 at 2. Among the overt acts charged in the indictment were attempted murders, armed robberies, drug sales, and weapon possessions. The indictment charged Johnson with two overt acts: an armed robbery on January 28, 2014, and an armed robbery committed with co-defendant DeMarcus Morris ("Morris") on January 28, 2014. *Id.* at 7. Johnson and four co-defendants proceeded to trial. Trial testimony established that Johnson personally participated in two armed robberies during which shots were fired, victims were injured, and one of Johnson's co-conspirators was killed in the crossfire. Record Document 609 at 9, 11-12.

After the conclusion of the thirteen-day trial, the jury found Johnson guilty of RICO conspiracy in violation of 18 U.S.C. § 1962(d). Record Document 357. Johnson's presentence report calculated a total offense level of thirty-nine and a criminal history category of IV (with nine points), making Johnson's Guideline range 360 months to life. Record Document 475 at 24. However, the statutorily authorized maximum sentence for Johnson's crime of conviction was 240 months. *Id.* Accordingly, Defendant was sentenced to 240 months imprisonment and three years of supervised release. Record Document 471. At sentencing, the Court recounted the violent nature of Johnson's offenses and noted that it was constrained by the statutory maximum sentence. Record Document 570 at 31. Johnson's counsel raised several objections during the sentencing hearing, all of which were overruled by the Court. *See generally* Record Document 570. On August 11, 2020, the United States Court of Appeals for the Fifth Circuit affirmed Johnson's conviction. Record Document 609.

## **Law & Analysis**

### I.     **Relevant Law**

Under 28 U.S.C. § 2255, a prisoner may move to vacate, set aside, or correct a sentence imposed by a federal court if: (1) the sentence "was imposed in violation of the Constitution or laws of the United States[;]" (2) "the court was without jurisdiction to impose such sentence[;]" (3) "the sentence was in excess of the maximum authorized by law[;]" or (4) the sentence "is otherwise subject to collateral attack." *United States v. Scruggs*, 691 F.3d 660, 666 (5th Cir. 2012); 28 U.S.C. § 2255(a). "As the Supreme Court holds, '[h]abeas review is an extraordinary remedy and will not be allowed to do service

for an appeal.'" *United States v. Cooper*, 548 F. App'x 114, 115 (5th Cir. 2013) (internal quotations and citations omitted) (quoting *Bousley v. United States*, 523 U.S. 614, 621 (1998)). After a defendant is convicted and exhausts the right to appeal, a court is "entitled to presume that the defendant stands fairly and finally convicted." *United States v. Shaid*, 937 F.2d 228, 231–32 (5th Cir. 1991) (internal marks omitted) (quoting *United States v. Frady*, 456 U.S. 152, 164 (1982)).

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Young*, 77 F. App'x 708, 709 (5th Cir. 2003) (citing *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)). One transgression courts may consider for the first time on a § 2255 motion is a claim for ineffective assistance of counsel. *See United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996). To state a successful claim of ineffective assistance of counsel, petitioner must demonstrate two things: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Failure to establish either prong of the *Strickland* test will result in a finding that counsel's performance was constitutionally effective. *Id.*; *see also Tucker v. Johnson,* 115 F.3d 276, 280 (5th Cir. 1997). The petitioner bears the burden of proof of showing both prongs are met. *See Strickland*, 466 U.S. at 687. A court may reject an ineffective assistance of counsel claim upon an insufficient showing of either deficient performance or prejudice without inquiry into the remaining prong. *See id.* at 689-94.

When determining whether counsel's performance was deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal mark and citation omitted). If a tactical decision is "conscious and informed . . . [, it] cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Crane v. Johnson*, 178 F.3d 309, 314 (5th Cir. 1999). Courts must be "highly deferential" to counsel's performance and make every effort "to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Thus, this Court's review "strongly presum[es] that counsel has exercised reasonable professional judgment." *United States v. Payne*, 99 F.3d 1273, 1282 (5th Cir. 1996) (quoting *Lockhart v. McCotter*, 782 F.2d 1275, 1279 (5th Cir. 1986)).

To establish the second prong of prejudice, the petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A defendant is not prejudiced if "the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Self-serving conclusory statements that the outcome would have been different "fall[] far short of satisfying Strickland's prejudice element." *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001).

"While the Constitution guarantees criminal defendants a competent attorney, it does not insure [sic] that defense counsel will recognize and raise every conceivable ... claim." *Jones v. Davis*, 673 F. App'x 369, 375 n.54 (5th Cir. 2016) (quoting *Ragland v. United States*, 756 F.3d 597, 601 (8th Cir. 2014)). "Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim." *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990); *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

## II.    Analysis of Claims

In his § 2255 motion and reply brief, Johnson raises several claims regarding his counsel's alleged deficiencies during his pretrial, trial, and appellate proceedings. Record Documents 629 & 663. The Court addresses each claim in turn.[1]

### A. Failure to File Motions to Suppress

Johnson argues his counsel was ineffective for failing to file motions to suppress three categories of evidence presented at trial: (1) the guns found on the scene of the January 28, 2014 armed robberies, and potentially some of the other ten guns introduced at trial; (2) several witnesses' inconsistent statements; and (3) a ski mask found at the

---

[1] Many of the "counts" Johnson alleges in his § 2255 motion include more than one allegation of ineffective assistance of counsel, while other counts have overlapping factual allegations. The Court does not address the counts as numbered or categorized by Johnson but based on their substance.

6

scene of one of the January 28, 2014, armed robberies with Johnson's DNA on it. Record Documents 629 at 4, 629-1 at 1, 8 & 663 at 23.

The Supreme Court has explained that "the failure to file a suppression motion does not constitute per se ineffective assistance of counsel." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). To successfully challenge counsel's failure to litigate a Fourth Amendment claim, a defendant must "prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Id.* at 375; *see Jackson v. Thaler*, 358 F. App'x 585, 586 (5th Cir. 2009) ("An attorney's failure to file a motion to suppress may constitute deficient performance if the evidence would have been suppressed as a result of the motion."). *Kimmelman* instructed:

> Although a meritorious Fourth Amendment issue is necessary to the success of a Sixth Amendment claim . . . , a good Fourth Amendment claim alone will not earn a prisoner federal habeas relief. Only those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial without the challenged evidence.

*Id.* at 382. The defendant bears the burden of proving that the evidence "admitted at his trial would have been suppressed as a result of such a motion." *Jackson*, 358 F. App'x at 586. "Generally, on a motion to suppress, the defendant has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of [his] constitutional rights." *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001).

As with all ineffective assistance claims, the reasonableness of counsel's failure to file a motion to suppress is assessed "from counsel's perspective at the time of the alleged

7

error and in light of all the circumstances." *United States v. Scott*, 11 F.4th 364, 369 (5th Cir. 2021). "[C]ounsel's failure to move to suppress evidence, when the evidence would have been suppressed if objected to, can constitute deficient performance (cause), unless counsel's failure was due to a tactical decision." *Martin v. Maxey*, 98 F.3d 844, 848 (5th Cir. 1996), *abrogation on other grounds recognized by Evans v. Davis*, 875 F.3d 210, 217 n.5 (5th Cir. 2017). The question is not whether defense counsel made the correct decision but rather whether defense counsel acted reasonably under the circumstances. *See Scott*, 11 F.4th at 369; *United States v. Dowling*, 458 F. App'x 396, 401 (5th Cir. 2012).

Johnson argues his counsel was ineffective for failing to file motions to suppress three categories of evidence presented at trial[2]: (1) guns introduced at trial, (2) the conflicting statements of testifying witnesses, and (3) the ski mask found with Johnson's DNA.[3] Record Documents 629 at 4, 629-1 at 1, 8 & 663 at 23.

---

[2] Johnson also broadly claims his counsel was ineffective for failing to file *any* motions to suppress—without naming the evidence that should have been suppressed or valid basis for such motions. Record Document 629 at 4. Johnson carries the burden of naming specific evidence his counsel should have moved to suppress. *Jackson v. Thaler*, 358 F. App'x 585, 586 (5th Cir. 2009). Johnson has not met that burden as it pertains to his broad claim. Therefore, the Court's analysis is limited the three specific categories of evidence Johnson identified.

[3] While not dispositive, the Court notes that there was only one motion to suppress filed by any other defendant in this case, which was unrelated to the evidence Johnson raises here. The only motion to suppress filed in this case was filed by Defendant Frank Morris based on an alleged *Miranda* violation. Record Document 219. Because the Government did not seek to introduce those statements in its case-in-chief, the Court denied the motion as moot. Record Document 239 at 12.

### i. Guns

First, Johnson argues his counsel should have moved to suppress guns introduced at trial, including the guns found on the scene of the January 28, 2014 armed robberies. Johnson contends the guns should have been suppressed because the Government's forensic testing did not trace any fingerprints to Johnson or his co-defendants. Record Document 663 at 23. In arguing that his counsel should have filed a motion to suppress, Johnson does not cite any statutory or constitutional right, nor any rule of evidence, that was violated by the introduction of the guns. Instead, Johnson points to the evidence and asks the Court to find the basis for a potential motion to suppress.

The Court will not do so. Johnson has failed to carry his burden of showing that evidence "admitted at his trial would have been suppressed as a result of such a motion." *See Jackson*, 358 F. App'x at 586. Johnson has not established that the introduction of the guns violated his constitutional rights. Further, the Court notes that Johnson's claim is that his fingerprints were not found on the guns. This is evidence Johnson and other defendants could have used to distance themselves from the weapons and bolster their defense. It was not unreasonable for Johnson's counsel to fail to file a motion to suppress evidence that could have, in fact, helped his case. Because Johnson has not alleged the basis for any motion to suppress the guns introduced at trial, he cannot show his counsel was deficient for failing to file such a motion.

### ii. Inconsistent Statements

Second, Johnson argues his counsel should have moved to suppress "inconsistent" statements made by several witnesses who testified at trial. Record Document 629-1 at

8. He argues that if his counsel had prepared by interviewing the witnesses prior to the trial, he would have moved to suppress their statements.[4] Johnson does not address which statements he believes should have been suppressed. He also, again, fails to cite any statutory or constitutional right, or rule of evidence, that would have provided the basis for a motion to suppress. There is no evidence that any statements taken from trial witnesses were taken in violation of Johnson's constitutional rights. Inconsistent statements alone are not the basis for a motion to suppress. In fact, inconsistent statements could have been beneficial to Johnson's case as a method of impeaching the witness(es). Because Johnson has not alleged any valid basis to suppress any witnesses' statements introduced at trial, he cannot show his counsel was deficient for failing to file such a motion.

### iii. Ski Mask

Finally, Johnson argues that his counsel should have moved to suppress a ski mask found at the scene of one of the January 28, 2014, armed robberies with Johnson's DNA on it. He argues that multiple persons' DNA was found on the ski mask, but his was the only DNA tested. *Id.* Once again, Johnson fails to name any statutory or constitutional right, or rule of evidence, that is violated by the introduction of the ski mask. He thereby fails to carry his burden of asserting a meritorious ground for a motion to suppress the ski mask. Because Johnson has not alleged any valid basis to suppress the ski mask, he cannot show his counsel was deficient for failing to file such a motion.

---

[4] Johnson's claim that his counsel was ineffective for failing to investigate and/or interview witnesses is discussed *infra*.

In sum, Johnson's counsel did not act unreasonably in declining to file a motion to suppress because there is no evidence that any such motion would have had any merit. Johnson's counsel cannot be deficient for failing to present a meritless claim. Therefore, this claim fails both prongs of the *Strickland* test. *See Smith*, 907 F.2d at 585 n.6.

## B.  Failure to Prepare and/or Request Continuance

Johnson's next claim is that his counsel was ineffective for failing to adequately prepare for trial or for failing to request a continuance. Johnson asserts that his counsel "made admissions to [Johnson] that he never reviewed complete discovery files." Record Document 629 at 4. He also claims his counsel stated that three weeks was not enough time to prepare a defense. *Id.*

"As the Fifth Circuit has recognized, the decision o[f] whether or not to seek a continuance is a matter of trial strategy, and federal courts 'will not question a counsel's reasonable strategic decisions.'" *Parker v. Cain*, No. 15-CV-0065, 2017 WL 4049598, at *9 (E.D. La. Sept. 13, 2017) (quoting *Bower v. Quarterman*, 497 F.3d 459, 470 (5th Cir. 2007)). Courts do not generally question counsel's strategic decisions, even where the strategy is ultimately unsuccessful. *Martinez v. Dretke*, 99 F. App'x 538, 543 (5th Cir. 2004) ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel."). "[T]here is no specified time interval which must come between appointment of counsel and trial." *United States v. Valdez*, 418 F.2d 363, 365 (5th Cir. 1969) (citing *Avery v. Alabama*, 308 U.S. 444 (1940)).

In *Bower*, the Fifth Circuit denied a petitioner's claim that his counsel was ineffective for failing to "ask[] for a continuance prior to trial in order to review and

synthesize the large amount of evidence in th[e] trial." 497 F.3d at 470. Petitioner's counsel told the court that he had received thousands of pages of reports, there were hundreds of witnesses involved, and that calling the case complicated "would be a gross understatement." *Id.* The Court rejected petitioner's ineffective assistance claim for two reasons. First, it found no other deficiency in counsel's performance at trial. Second, the decision to not request a continuance was a strategic move to "rush the state in its preparation of the case and limit the amount of circumstantial evidence it could marshal." *Id.*

Johnson was indicted by the federal grand jury on June 29, 2017, and was appointed counsel on July 12, 2017. Record Documents 1 & 55. On July 24, 2017, the Court granted an oral motion for discovery as to all defendants. Record Document 73. Later, during the parties' pretrial conference, the Court ordered the Government to provide Johnson and co-defendants with all *Kyles*, *Brady*, *Giglio*, and Jencks Act material by August 31, 2018, at the latest. Record Document 168 at 8. Johnson claims his counsel received discovery files on August 30, 2018. Record Document 629 at 5. The jury trial was originally set for September 10, 2018, and then continued to September 17, 2018, to allow the parties and the Court sufficient time to consider a new and potentially relevant Fifth Circuit decision. Record Documents 262 & 307.

The Court declines to call into question the strategic decisions of Johnson's counsel. *See Bower*, 497 F.3d at 470. There are several reasons that Johnson's counsel could have declined to move for a continuance. As explained *infra*, Johnson does not identify *any* evidence his counsel would have uncovered had he engaged in additional

preparation and/or investigation. *See Badger v. United States*, 16-CR-0014, 2020 WL 1190454, at *5 (N.D. Miss. Mar. 12, 2020) ("No further investigation . . . would have changed the [outcome] and counsel cannot be considered constitutionally ineffective for failing to pursue a fruitless avenue."). The Court does not find any deficiencies in counsel's preparation for trial.

Further, Johnson has not shown that the Court would have considered granting a continuance had his counsel requested it. "The decision on a motion for continuance is within the discretion of the trial judge and denial will justify federal habeas relief only if it is shown to be so arbitrary as to deny the applicant a fair trial." *Harrison v. Thaler*, No. 11-CV-0695, 2012 WL 1409269, at *10 (N.D. Tex. Apr. 23, 2012); *Avery*, 308 U.S. at 446 ("In the course of trial, after due appointment of competent counsel, many procedural questions necessarily arise which must be decided by the trial judge in the light of facts then presented and conditions then existing."). Johnson was tried with three co-defendants in a thirteen-day, high-security trial detailing years of drug and violent crime. The Court continued the trial once to account for new Fifth Circuit precedent. Johnson does not present any reason that his counsel could have or should have presented the Court to request a continuance other than that his counsel simply needed more time to review the evidence—the same claim the Fifth Circuit rejected in *Bower*. 497 F.3d at 470.

In sum, Johnson has failed to meet his burden of showing his counsel was deficient in his performance by failing to prepare and/or investigate prior to trial. This claim fails the first prong of the *Strickland* test. *See* 466 U.S. at 689.

### C. Failure to Consult

Next, Johnson alleges his counsel was ineffective for failing to consult with him before trial. Record Document 629 at 4. The Court initially notes that Johnson's claim that his attorney did not consult with him at all is plainly contradicted by his own filings. Johnson states in his motion that he "went over the discovery [he] had from the state with [counsel]," and later, in his reply brief, he states that he met with his counsel at least twice between the time his counsel received discovery and the start of trial. Record Document 629-1 at 5. Therefore, the Court reads Johnson's argument as challenging the length or depth of his consultation rather than one challenging the lack of a consultation altogether.

"[B]revity of consultation time between a defendant and his counsel, alone, cannot support a claim of ineffective assistance of counsel." *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984). Even where counsel's consultation is very brief, the defendant must establish how the brevity of the consultation changed the course of the representation. *Id.* at 282-83. The Fifth Circuit has held that counsel is not deficient for engaging in just one twenty-minute consultation where a petitioner cannot establish "what additional evidence could have been produced had additional conversations taken place," or any "available alternative defenses that [counsel] should have brought to his attention." *Id.* at 283.

Johnson alleges that his counsel was ineffective based on the brevity of their consultation because his counsel "never communicated about a defense against the witnesses['] statements, and he failed to obtain legally relevant facts" from Johnson.

14

Record Document 663 at 12. Johnson claims his counsel "mainly" told him that they should "just see what the government [would] present at trial." *Id.*

Johnson has not alleged with any particularity how a lengthier consultation would have changed the course of his counsel's representation. He has not alleged that his counsel was missing important facts or failed to present alternative defenses. By Johnson's own admission, his counsel reviewed all discovery with him. Record Document 629-1 at 5. Further, the record contradicts Johnson's assertions that his counsel did not have a trial strategy. During the parties' pretrial conference on June 14, 2018, Johnson's counsel requested permission to disclose to the jury that Johnson had been incarcerated since his January 2014 arrest as an "alibi defense of sorts, in that Johnson can argue that he could not have been a part of the conspiracy" during his incarceration. Record Document 168 at 9. In Johnson's own reply brief, he expresses his dissatisfaction with his counsel's strategy to prove that Johnson was not the "leader" of the overt actions/crimes that he was charged with, rather than attempting to prove that Johnson did not engage in the charged acts. Record Document 663 at 16.

In sum, neither the brevity nor substance of Johnson's counsel's consultations were unreasonable. Johnson's assertions that his counsel was unaware of critical facts and/or did not have a strategy are contradicted by the record. Because Johnson has failed to meet his burden of showing his counsel was deficient in his consultations, he fails to carry his burden as to the first *Strickland* prong. *See* 466 U.S. at 689.

### D. Failure to Conduct Adequate Investigation & Discovery

Johnson's next set of claims assert that his counsel was ineffective for failing to conduct adequate investigation and discovery during the pretrial stage by failing to interview and/or investigate witnesses, failing to hire an investigator, and failing to call various lay and expert witnesses.

#### i. Failure to Interview or Investigate Witnesses

Johnson claims his counsel was ineffective because he "made no pretrial investigations or/and interviews with victims and witnesses." Record Document 629 at 4. Johnson further claims his counsel told him that he did not know Erica Pitts ("Pitts") was testifying. *Id.* at 5. Johnson argues that because of his counsel's lack of preparation, he was "improvising when cross-examining inconsistent witness testimony." *Id.* at 4; Record Document 629-1 at 1. However, Johnson's reply brief suggests that his counsel did conduct an adequate investigation. Johnson states that his counsel filed a number of motions on his behalf and "was aware of all statements made by witnesses from police reports and discovery." Record Document 663 at 13-14. Johnson contends only that his counsel "should have interviewed the witnesses to get his own version of the case and to present the evidence he got." *Id.* at 18.

To provide effective assistance during the pretrial stages, trial counsel must "conduct a reasonable amount of pretrial investigation." *Nealy v. Cabana*, 764 F.2d 1173, 1177 (5th Cir. 1985) (quoting *Martin v. Maggio*, 711 F.2d 1273, 1280 (5th Cir. 1980)); *Bower*, 497 F.3d at 467 ("An attorney has a duty to independently investigate the charges against his client." (citing *Wiggins v. Smith*, 539 U.S. 510, 524 (2003)). However, to

prevail on a habeas claim regarding a failure to conduct an investigation, the movant must "point to . . . specific evidence that would have been uncovered by a more thorough investigation." *Nealy*, 764 F.2d at 1178. A "failure to investigate can be constitutionally deficient only if it resulted in the exclusion of competent evidence." *United States v. Drones*, 218 F.3d 496, 502 (5th Cir. 2000).

Johnson only alleges with particularity four varied deficiencies in his counsel's investigation that he contends would have changed the outcome of the trial. He alleges his counsel was deficient for failing to: (1) call as a witness, or introduce statements of, Tyrell Jackson ("Jackson"); (2) locate statements made by Pitts and/or Darian Adams ("Adams") prior to trial; (3) know that Pitts was testifying at trial; and (4) interview Kameshia Martin ("Martin").

### a) Jackson

Johnson asserts his counsel was ineffective for failing to call as a witness, or otherwise introduce previous statements of, Jackson, a victim of one of Johnson's armed robberies. Record Documents 629 at 5 & 629-1 at 1. Johnson alleges that Jackson would have testified that he was not the person who shot Jackson. *Id.* Even assuming that Johnson's counsel was deficient for failing to secure or introduce Jackson's statements, Johnson cannot establish prejudice for several reasons.

The jury found Johnson guilty on Count One for RICO conspiracy. Record Document 357. The jury also specifically found Johnson guilty of the following overt acts, which constitute racketeering acts: attempted murder (more than one time), robbery (one time only), and attempted robbery (one time only). *Id.* A defendant need only

commit two racketeering activities within a ten-year period to be found guilty of a RICO violation. *See* 18 U.S.C. § 1961(5). Even assuming that one instance of attempted murder was not supported by the evidence, there are at least three other racketeering acts that support a guilty verdict on Count One. Perhaps more importantly, even if Johnson did not actually *shoot* the bullet that hit Jackson, he—at minimum—aided and abetted his co-conspirator who would have shot the bullet, which is sufficient alone to tie Johnson to the act.

Additionally, in its review of the sufficiency of the evidence to support Johnson's conviction, the Fifth Circuit emphasized that Johnson "knew of and agreed to the overall objective of the conspiracy," addressing Johnson's claims as follows:

> Johnson argues that th[e] evidence was insufficient to support his conviction because the government did not prove that he engaged in specific predicate offenses with a nexus to the Block Boyz enterprise. Again, however, **the government need only establish that Johnson knew of and agreed to the overall objective of the conspiracy**. *See Delgado*, 401 F.3d at 296. The government did that and then some; it presented evidence that Johnson committed attempted murder, robbery, and attempted robbery in connection with the Block Boyz. …

> Johnson also argues that "two home invasions on the same day does not show a pattern of racketeering activity." This argument fails for at least two reasons. First, **Johnson need not have committed any predicate offense. It is enough that two people agreed to violate Section 1926(c) and that Johnson "agreed to the overall objective of the conspiracy**." *Delgado*, 401 F.3d at 296. The jury could find the conspiratorial agreement from the Block Boyz's many actual and planned criminal acts, including the drug dealing and shootings in which Johnson participated. Second, the two robberies constitute separate offenses. Although they occurred on the same night, the robberies were not a single criminal transaction—they involved different accomplices, different victims at different locations, and a break in-between. … Johnson's contrary argument is unavailing.

18

Record Document 609 at 18-19 (emphasis added). The fact that Johnson alleges he did not shoot the bullet that hit Jackson does not negate the extensive, additional evidence presented by the Government.

Because Johnson has not shown that he was prejudiced by any alleged deficiencies in his counsel's failure to introduce Jackson's statements, he fails to carry his burden as to the second prong of the *Strickland* test and this claim fails. *See* 466 U.S. at 694.

### b) Pitts and Adams

Johnson next alleges that his counsel did not locate statements made by Pitts or Adams prior to trial. Record Documents 629 at 5 & 629-1 at 1. This claim fails for two reasons. First, while Johnson argues his counsel should have interviewed these witnesses personally, he does not allege with specificity any information his counsel could have learned through such interviews. *See Nealy*, 764 F.2d at 1177. Second, even without the witness's statements, there was sufficient evidence to tie Johnson to the scene of the armed robbery. Indeed, Johnson seems to concede that the witnesses' statements were unnecessary to convict him. Johnson admits that neither witness "ever state[d] that the defendant shot or robbed anyone during these incidents." Record Document 663 at 19. The Fifth Circuit rejected Johnson's challenge to the sufficiency of the evidence. Record Document 609 at 18-19. Nothing Johnson alleges now would undermine that decision.

Because Johnson has not shown his counsel was deficient in investigating or interviewing Pitts or Adams, he fails to carry his burden as to the first prong of the *Strickland* test and this claim fails. *See* 466 U.S. at 689.

### c) Pitts

Johnson alleges his counsel's inadequate investigation is further evidenced by the fact that Johnson's counsel told him that he did not know Pitts was testifying at trial. Record Document 629 at 5. Johnson's counsel did not need to know Pitts was testifying to have been effective. At Johnson's trial, witness lists were due to the Court the morning of the first day of trial. Record Document 168 at 17. Due to concerns about witness intimidation and safety, the parties agreed that each morning of trial, counsel would "notify all other counsel of the anticipated order of witness testimony for that day, unless good cause exist[ed] to keep the names confidential." *Id.*; *see also United States v. Aguilar*, 503 F.3d 431 (5th Cir. 2007) ("The Supreme Court has established that there is no constitutional right to pretrial discovery of witnesses in non-capital cases.") (citing *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)).

Johnson has not shown his counsel was deficient for failing to know that Pitts would testify as a witness. Therefore, he fails to carry his burden as to the first prong of the *Strickland* test and this claim fails. *See* 466 U.S. at 689.

### d) Martin

Johnson next alleges his counsel's preparation was inadequate because he should have interviewed Martin about her statement that her perpetrators did not wear ski masks or gloves during the armed robbery, and her subsequent identification of Johnson in a photographic lineup. Record Document 663 at 20. Johnson specifically contends that if his counsel "interviewed Martin, and present[ed] to her" evidence that Johnson's DNA

was found on a mask allegedly used during the incident and that his DNA was not on the weapon(s) found after that incident, it would have led to a different trial outcome. *Id.*

This argument fails for several reasons. Johnson does not allege any additional information his counsel could have obtained by interviewing Martin. He alleges only that his counsel could have presented the witness with evidence contrary to her account—something that occurs on cross-examination. Johnson's counsel was not ineffective for failing to discuss or present conflicting evidence to a witness before that point.

Further, this evidence would not have changed the outcome. There was conflicting evidence at trial about whether the individuals who perpetrated the armed robbery wore ski masks and, if so, when they put on the ski masks. Whether or not Johnson's DNA was present on those (potentially relevant) ski masks has no bearing on Martin's statements that they were not wearing ski masks. Further, the fact that Johnson's DNA was not found on the weapons would not change the fact that Martin recognized Johnson in the photographic lineup.[5]

Because Johnson has not shown his counsel was deficient nor that he was prejudiced by any alleged failure, he fails to carry his burden as to both prongs of the *Strickland* test and this claim fails. *See* 466 U.S. at 689-94.

### ii.  Failure to Hire Investigator

Johnson also claims that his counsel was ineffective for failing to hire an investigator. Record Document 629-1 at 5. But as with his general claims that his counsel did not conduct adequate investigations or interviews, Johnson does not point to any

---

[5] Johnson's claim regarding the photographic lineup is discussed *infra*.

specific information that an investigator could have, or would have, found that would have changed the outcome of the trial. *See Nealy*, 764 F.2d at 1177. Therefore, the claim that his counsel was ineffective for failure to hire an investigator fails on the first prong of the *Strickland* test. *See* 466 U.S. at 689.

### iii.  Failure to Call Witnesses

Johnson alleges his counsel was ineffective for failing to call witnesses. He claims that his counsel should have retained an expert to testify regarding the forensic evidence, including the ski mask, blood/DNA, and guns. Record Document 629-1 at 1.

In addressing counsel's alleged failures to call witnesses at trial, the Fifth Circuit has explained:

> This Court has repeatedly held that complaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative. *Bray v. Quarterman*, 265 Fed. Appx. 296, 298 (5th Cir. 2008). Thus, to prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. *Id.* (citing *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)). We have required this showing for claims regarding uncalled lay and expert witnesses alike.

*Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).

Johnson claims his counsel did not investigate the forensic expert testimony about the ski mask, blood, DNA, or gun(s) but instead "relied" on the Government's expert testimony. Record Documents 629 at 4 & 629-1 at 1. In his reply brief, Johnson alleges that his counsel should have hired an expert to test the DNA found on the ski mask. Record Document 633 at 20-21. He claims that because the mask was tested years after

the incident, his counsel should have hired someone to test the mask to "see if the facts were true . . . instead of accepting the government expert testing." *Id.* Although the ski mask had three persons' DNA on it, the Government only tested Johnson's DNA. *Id.* Johnson argues that if another suspect's DNA was found on the ski mask, there would have been a different outcome "because the government would have never been able to prove who wore the ski mask the night of overt act 4 and 5." *Id.* at 22.

Defense counsel is under no obligation to obtain expert witnesses to dispute every issue in a case. Expert testimony is only expected where the testimony is related to a crucial and legal issue that rests on the reliability of scientific evidence. *Bower*, 497 F.3d at 472. "[F]ailure to identify an expert whose testimony would have altered the outcome of his trial is fatal to [a] habeas claim." *Earhart v. Johnson*, 132 F.3d 1062, 1068 (5th Cir. 1998) (citing *Ricalday v. Procunier*, 736 F.2d 203, 208 (5th Cir. 1984)). This is because "unsupported claims regarding [an] uncalled expert witness are speculative and disfavored by th[e Fifth Circuit] as grounds for demonstrating ineffective assistance of counsel." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) (citing *Sayre*, 238 F.3d at 635–36). In *Cockrell*, the Fifth Circuit rejected a similar claim by a defendant who argued that his counsel should have had a bloody shirt tested, reasoning that "[t]here was never any question regarding whose blood was on [the] shirt." *Id.* The defendant had conceded that the blood was his, counsel argued so at trial, and the government never contradicted the assertion. *See id.*

The expert testimony Johnson contends he was entitled to was not related to a crucial, legal issue that was based on the reliability of scientific evidence. *See Bower*, 497

F.3d at 472. Johnson does not challenge the reliability or methodology of the DNA test, and does not suggest that a hypothetical expert could or would have challenged the reliability or methodology. He argues only that the presence of the other suspects' DNA on the ski mask would have made it impossible to determine who wore the mask on the evening of the armed robberies. Record Document 663 at 22. But like the *Cockrell* defendant, Johnson does not contend that the DNA on the ski mask is not his. It is unclear what conclusion would have been helpful to Johnson even if an expert was retained.

Because Johnson has not shown his counsel was deficient for failing to retain a DNA expert, he fails to carry his burden as to the first prong of the *Strickland* test and this claim fails. *See* 466 U.S. at 689.

### E. Failure to Conduct Effective Cross-Examinations

Johnson alleges his counsel was ineffective in his cross-examination of witnesses during trial, largely because of his counsel's alleged lack of preparation for trial discussed *supra*. Record Document 629 at 4. Johnson specifically argues his counsel was ineffective during his cross-examinations of witnesses Adams, Pitts, Rossalyn Durden ("Durden"), and Martin.[6] Record Document 629-1 at 5.[7]

---

[6] Johnson also claims his counsel was ineffective for failing to cross-examine Jackson about his violent exploits and/or bad character. Record Document 629-1 at 5. However, because Jackson did not testify at trial, Johnson's counsel could not have been ineffective in cross-examining him.

[7] The Court notes that Johnson argues his counsel was limited in his cross-examination of co-defendant Rodrick Hicks because of an alleged conflict of interest of another attorney. Because of the overlapping claims based on conflict of interest, the Court considers this claim separately in its analysis of the alleged conflict *infra*.

"Because decisions regarding cross-examination are strategic, they usually 'will not support an ineffective assistance claim.'" *United States v. Bernard*, 762 F.3d 467, 472 (5th Cir. 2014) (quoting *Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002)). Where a defendant raises mere conclusory allegations that counsel's cross-examination was ineffective, the Court will not examine whether counsel's alleged failure prejudiced the defendant. *Day*, 566 F.3d 527.

The Court considers only the specific cross-examination deficiencies that Johnson raises in his motion. This includes Johnson's contentions that (1) Adams and Pitts should have been impeached "about their accomplice character" and the immunity they received in exchange for their testimony; and (2) all four witnesses should have been cross-examined about "their own retaliatory and violent exploits and bad character." Record Document 663 at 32. According to Johnson, his counsel only cross-examined the witnesses about Johnson's role in the overt acts charged in the indictment. *Id.* The Court considers Johnson's claims as to each witness in turn: Adams, Pitts, then Durden and Martin.

Johnson claims his counsel should have asked Adams about his role as an accomplice, what he received in exchange for his testimony, and his violent exploits and bad character. Adams did, in fact, testify to all these things.[8] Adams testified in detail

---

[8] Johnson was tried with three of his co-defendants and witnesses were subject to cross-examination by several attorneys. Any testimony proffered at trial before the jury would have been relevant to the jury's determinations as to all defendants unless accompanied by a limiting instruction. In other words, if the jury heard witness testimony that was elicited by another attorney, Johnson's counsel was not ineffective for failing to draw out that information during his own cross-examination.

about his involvement with the armed robberies that were committed on January 28. *See, e.g.*, Record Document 555 at 244-49, 252-56. He testified that he was aware he could face charges based on his involvement and was "told that truthful cooperation could possibly help" him. *Id.* at 224. Adams also testified that he has sold crack and had previous criminal convictions. *Id.* at 223, 240. Johnson's counsel was not ineffective for failing to effectively cross-examine Adams because Adams did, in fact, testify to all the things Johnson claims his attorney should have elicited on cross-examination. Therefore, Johnson's counsel was not deficient in his cross-examination of Adams.

Johnson also claims his counsel should have asked Pitts about her role as an accomplice, what she received in exchange for her testimony, and her violent exploits and bad character. Like Adams, Pitts testified in detail about her involvement in the armed robberies that were committed on January 28. *See, e.g.*, Record Document 549 at 51-62. She testified that she was aware she could face potential charges because of the events and was "told that truthful cooperation could help" her with the charges. *Id.* at 45. On cross-examination, Johnson's counsel asked Pitts about her cooperation with the FBI and/or the U.S. Attorney's Office, as well as whether Pitts had been promised anything related to her potential charges in exchange. *Id.* at 85-86. While Pitts did not testify to any "violent exploits" or other evidence of her "bad character," Johnson does not allege any information about Pitts's violent character or bad character that his attorney could have, but did not, elicit on cross-examination. Therefore, Johnson's counsel was not deficient in his cross-examination of Pitts.

Johnson claims his counsel was ineffective for failing to cross-examine Durden and Martin about their violent exploits and/or bad character. Durden testified about her prior drug use. Record Document 549 at 117-18. Martin testified that she had guns in her home, and that she shot at one of the men that broke into her home. Record Document 547 at 143-45. Martin also testified about her drug and alcohol use. *See, e.g., id.* at 159-60. Johnson does not allege any "violent exploits" or "bad character" about which his counsel should have questioned Durden or Martin. Therefore, his counsel was not ineffective for failing to elicit such information.

In sum, Johnson has not presented any facts that his counsel should have, but did not elicit, from any of the testifying witnesses at trial. Therefore, his counsel was not ineffective in his cross-examination and this claim fails.

### F. Failure to Raise Potential Conflict of Interest

Johnson next claims his counsel was ineffective for failing to alert the Court of a potential conflict of interest. Record Documents 629 at 7 & 663 at 36-37. On September 29, 2015, Charles Kammer ("Kammer") was appointed to represent Johnson on state charges for two counts of attempted first degree murder, one count of armed robbery, and one count of attempted armed robbery. Record Document 654-1 at 8. These offenses were later charged as part of the federal RICO conspiracy. Record Document 29 at 7. When Kammer began representing Johnson on the state charges, Johnson's previously appointed counsel had already filed motions for discovery, to quash the indictment, to suppress evidence, for speedy trial, and to continue the case; the state had issued several responses to discovery. *See* Record Document 654-1 at 8-12.

During Kammer's representation of Johnson, Kammer "received discovery," successfully secured a reduction of bond, and consulted with Johnson. Record Document 663 at 36. The state court appointed Johnson new counsel to represent him on the state charges on August 17, 2016. Record Document 654-1 at 6. Johnson submits that because of Kammer's representation of him, "Kammer knew [he] was capable of having guns. . . [and] knew [Johnson] was capable of committing crimes." Record Document 663 at 36.

Later, after Kammer's representation of Johnson on the state charges was terminated, Kammer was appointed to represent Johnson's co-defendant Rodrick Hicks ("Hicks") in the federal case. Hicks ultimately pled guilty and testified against Johnson. *Id.* Johnson alleges that he alerted his trial counsel, Stephen Glassell ("Glassell") of this potential conflict. In response, Glassell allegedly told him that "'he spoke with 'Kammer' and they agreed 'Hicks' would not testify about the charges 'Kammer' represented defendant for.'" *Id.* Johnson argues that because Hicks testified at trial that Johnson possessed firearms and committed a shooting, Hicks testified to information regarding the state court charges. He further argues that "due to the conversation [Glassell] had with Kammer about the situation [Glassell] could only go so far with cross-examing [sic] Hicks." *Id.* at 37.

In response to Johnson's allegations, the Court ordered both Kammer and Glassell to submit affidavits discussing the extent to which they were aware of the potential conflict and confirming or denying the allegation that there was any effort to limit testimony and/or cross-examination. Record Document 738.

Kammer submitted a responsive affidavit. Record Document 739. Kammer states that he recalls "having at least one conversation with Glassell." *Id.* at 1. During that conversation, Kammer explained to Glassell that he had "limited involvement" in Johnson's state case, "which included providing Lonnie Johnson with any discovery received and filing a motion to reduce bond." *Id.* Kammer submits that "there was no agreement or discussion to limit any testimony or cross examination of Mr. Hicks in the federal case." *Id.*

Glassell also submitted a responsive affidavit. Record Document 740. Glassell states that when he learned Kammer represented Johnson in state court, he contacted Kammer to see if he had a conflict. Kammer confirmed he did not. Glassell shared this information with Johnson and discussed Kammer's involvement in the federal case. Glassell recalls that Johnson told him that "he had no problem with Kammer representing Hicks." *Id.* at 1. Glassell notified Kammer that Johnson did not object to his representation of Hicks. Glassell "left it up to" Kammer to withdraw if he felt there was a conflict. *Id.* When Glassell saw online that Hicks was pleading guilty, he asked Kammer if Hicks was cooperating with the Government. However, Glassell does not remember Kammer's response. Glassell did speak with Kammer prior to Hicks's trial testimony, but "do[es] not remember exactly what was said." *Id.* at 2. Glassell submits that he "did not make any agreements with Kammer about the testimony of Hicks." *Id.*

Glassell's affidavit submits that his trial strategy was to show that Johnson's charged offenses were not a part of the Block Boyz activity because the other person involved in the armed robberies, Hammer, was not a Block Boy. *Id.* at 2. Glassell submits

29

his main goal for Hicks's cross-examination was to elicit testimony that Hammer was not a Block Boy. *Id.* at 3. Glassell was able to elicit that testimony and believed it bolstered Johnson's defense. *Id.* at 2-3.

To analyze Johnson's claim that Glassell was ineffective for failing to raise a potential conflict of interest, the Court first considers whether a conflict in fact existed. If there was no conflict, Glassell was not ineffective for failing to raise the conflict to the Court. Therefore, the Court turns to whether Kammer operated under an actual conflict of interest.

"An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." *United States v. Infante*, 404 F.3d 376, 392 (5th Cir. 2005) (quoting *Mickens v. Taylor*, 535 U.S. 162, 172 n.5 (2002)).[9] "An adverse effect on counsel's performance may be shown with evidence that counsel's judgment was actually fettered by concern over the effect of certain trial decisions on other clients." *Id.* at 393 (quoting *Perillo v. Johnson*, 205 F.3d 775, 807 (5th Cir. 2000)). "[T]he determination of actual conflict and adverse effect is tightly bound to the particular facts of the case at hand." *Perillo*, 205 F.3d at 782.

Whether an actual conflict exists is "highly fact-sensitive." *Infante*, 404 F.3d at 392. The Fifth Circuit has advised that:

---

[9] "'[E]ven in the absence of a showing of prejudice,' a defendant is deprived of the constitutional right to effective assistance of counsel 'when his attorney operates under an actual conflict of interest.'" *United States v. Gutierrez*, 548 F. App'x 181 (5th Cir. 2013) (quoting *United States v. Alvarez*, 580 F.2d 1251, 1260 (5th Cir. 1978)). However, as explained *infra*, to determine whether an actual conflict existed, the Court does look to whether there was an adverse effect on counsel's performance.

> [w]hether a conflict of interest exists depends on a number of factors, including, but not limited to, whether the attorney has confidential information that is helpful to one client but harmful to another; whether and how closely the subject matter of the multiple representations is related; how close in time the multiple representations are related; and whether the prior representation has been unambiguously terminated.

*Id.* at 392 (citing *Perillo*, 205 F.3d at 798-99).

In *Infante*, the Fifth Circuit considered whether there was an actual conflict where defendant's counsel had previously represented two witnesses who were testifying against the defendant at trial. 404 F.3d at 390. Counsel denied learning any confidential information from his former clients. *Id.* at 390-91. And while both witnesses testified against the defendant, "neither one directly implicated [the defendant] in the alleged conspiracy." *Id.* However, the Fifth Circuit found there was an actionable conflict of interest because the representations were close in time, on nearly identical subject matters, and because counsel's "representation of the two witnesses had not been unambiguously terminated." *Id.* at 392. Defendant's counsel "admitted that he would seek a substantial assistance motion from the government for their testimony against his new client." *Id.* The Fifth Circuit reasoned:

> [Defense counsel] was put in a position conducive to divided loyalties because he had to choose between vigorously cross-examining his former clients, which might jeopardize their chances of the government filing a Rule 35 motion on their behalf, and not vigorously cross-examining them, which would risk allowing the government to establish through their testimony an essential element of the case against [defendant]—namely, that a conspiracy existed.

*Id.* The Court found that, largely because the representation was not unambiguously terminated, defense counsel had an actual conflict of interest. *Id.*

31

But in *Gutierrez*, the Fifth Circuit found no actual conflict where—as here—the defendant claimed he was deprived of conflict-free representation when his former counsel represented a co-defendant who ultimately testified against him. *United States v. Gutierrez*, 548 F. App'x 181 (5th Cir. 2013). The Court found that in that case, counsel's representation of Gutierrez had "unquestionably terminated" and did not constitute an actual conflict. *Id.* at 184. The court reasoned:

> Though Gutierrez summarily state[d] that he "held nothing back" from [his former counsel], Gutierrez did not describe the scope of [the] representation of him, the amount he discussed his case with [his former counsel], the extent of confidential information he disclosed to [his former counsel], or any actions that [his former counsel] took on his behalf during the representation. Nor does Gutierrez explain how any of the information he gave Garcia could have bolstered [the co-defendant's] plea bargaining position. . . . Gutierrez does not show that [his former counsel's] alleged conflict of interest actually adversely affected trial counsel's representation of him. Accordingly, on these facts, Gutierrez has not shown a violation of his Sixth Amendment right to the effective assistance of counsel.

*Id.*

To determine whether Kammer had an actual conflict, the Court considers whether Kammer's successive representation of Johnson and Hicks put Kammer in a position of divided loyalties such that his "judgement was actually fettered." *Gutierrez*, 548 F. App'x at 184. A fact-intensive analysis of the instant motion makes clear that Johnson's claims fall closer to those in *Gutierrez* than in *Infante*. Kammer's representation of Johnson was unquestionably terminated in August 2016, nearly two years before the federal trial. *See* Record Document 654-1 at 6. While the subject matter of his previous representation was the same that was at issue in the trial before this Court, Kammer was never put "in a position conducive to divided loyalties." *See Infante*, 404 F.3d at 392. Kammer's

representation of Johnson was limited to receiving discovery and filing a motion to reduce bond.

The Court also looks to whether Kammer's subsequent representations "adversely affecte[ed]" Kammer's performance in relation to Johnson. *See Infante*, 404 F.3d at 392. Johnson does not allege with specificity any confidential information Kammer learned through his representation of him—let alone that that confidential information could have been helpful to Hicks in some way. To the contrary, Johnson alleges broadly that because Kammer represented him, he knew about the charges against him and that he was capable of committing crimes. Record Document 663 at 36. However, the state charges against Johnson were not confidential. It is true that confidential information learned about a client from any source can be considered for the purposes of evaluating a conflict. *See Perillo*, 205 F.3d at 799. But to raise a conflict, the confidential information should be "helpful to one client but harmful to another." *Id.* at 798. Johnson has not identified any such confidential information. Indeed, Johnson "does not describe the extent of any prior conversations he had with [Kammer], the scope of any information he disclosed to him, or any actions that [Kammer] took [during state court representation] that relied on confidential or privileged information that [Johnson] communicated to him previously." *See Harvin v. Davis*, No. 17-CV-0003, 2018 WL 2198841, at *6 (N.D. Tex. Mar. 1, 2018).

Nor does Johnson allege how any confidential information Kammer may have possessed adversely affected the outcome of the trial. *See id.* at *7; *Gutierrez*, 548 F. App'x at 184. A review of Hicks's trial testimony shows that Hicks's testimony as to Johnson was limited to his personal knowledge. Hicks testified to the following:

- Hicks knew Johnson through friends and knew him to go by the nickname "D-Money." Record Document 403 at 10.

- Johnson was an original Block Boy. *Id.* at 17.

- Johnson was the owner of a particular Facebook page. *Id.* at 18.

- Johnson appeared in three photos presented to Hicks. *Id.* at 18-19, 22.

- Hicks did not recall when Johnson got his tattoos. *Id.* at 20.

- Hicks followed Johnson on Twitter and Johnson's Twitter username was DmoneyBBHB. *Id.* at 21.

- Hicks saw Johnson shoot Gingerbread during a fight, and the bullet hit Gingerbread. *Id.* at 36.

- Hicks had known Johnson for about ten years. *Id.* at 37.

- Hicks had seen Johnson with a handgun and assault rifle. *Id.* at 38.

On cross-examination, Glassell asked Hicks to confirm that the Block Boyz started as a rap group and that the lyrics posted on several Block Boyz' social media profiles were lyrics to rap songs. *Id.* at 44-45. He then asked Hicks whether Hammer was a Block Boy. *Id.* at 45. Hicks confirmed that Hammer was not. *Id.*

Johnson does not allege that Kammer obtained any confidential information about him based on his prior representation nor that any such confidential information could have been helpful to Hicks. A review of Hicks's testimony shows that Hicks did not testify to the two overt acts charged against Johnson. Rather, Hicks testified only to his personal relationship with Johnson and acts he personally observed.

Based on a careful review of the record and Johnson's claims, the Court finds that Kammer did not operate under an actual conflict of interest.[10] He did not operate under divided loyalties and his performance was not adversely affected by his successive representation of Johnson and Hicks. Having concluded that Kammer did not operate under a conflict of interest, the Court briefly turns to whether Glassell was ineffective for failing to raise the potential conflict to the Court. The Court finds that because there was no conflict of interest, Glassell was not deficient for failing to raise it to the Court. *See Strickland*, 466 U.S. at 694.[11]

The Court notes that while Johnson raises his conflict of interest claim under the Sixth Amendment right to effective assistance of counsel, Johnson also suggests that his counsel limited his cross-examination of Hicks to avoid a conflict.[12] The Sixth Amendment

---

[10] The Court's analysis on Johnson's conflict of interest claim focuses solely on Johnson's factual claims, the attachments to the Government opposition detailing Kammer's state court representation of Johnson, and the extent of Hicks's trial testimony.

[11] Even if Johnson's allegations were true, Johnson's assertions and the trial transcripts conclusively establish that Johnson is not entitled to relief as a matter of law. Johnson has not alleged any confidential information that Kammer would have learned through his representation of Johnson nor does Hicks's trial testimony evidence include any such information. Kammer's representations did not adversely affect Johnson at trial. Accordingly, Johnson is not entitled to an evidentiary hearing on his conflict of interest claim. *See United States v. Harrison*, 910 F.3d 824, 826-27 (5th Cir. 2018), *as revised* (Dec. 19, 2018) (finding that a court may deny a § 2255 motion without an evidentiary hearing if "the movant would not be entitled to relief as a matter of law, even if his factual assertions were true").

[12] Because Johnson is a *pro se* prisoner, his filings are "entitled to the benefit of liberal construction." *Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011). The Court notes that Johnson did not raise a Confrontation Clause concern but, based on his *pro se* status, the Court considered the issue. While considering this issue *sua sponte*, and out of an abundance of caution, the Court ordered affidavits from both Glassell and Kammer. Both

guarantees criminal defendants the right to confront witnesses against them. U.S. Const. amend. VI. However, both Kammer and Glassell confirm that there was no agreement to limit Glassell's cross-examination of Hicks to avoid a conflict or for any other reason. *See* Record Documents 739 at 1 & 740 at 2. Therefore, Johnson was not deprived of his right to confront the witnesses against him.

### G. Failure to Challenge Witness's Identifications

Johnson argues his counsel was ineffective for failing to challenge several identifications Martin made of Johnson. Record Documents 629 at 8 & 629-1 at 1. These include: (1) the out-of-court identification based on a photographic lineup presented to Martin by law enforcement after the incident; (2) the in-court identification of Johnson based on the previous photographic lineup; and (3) the in-court misidentification by Martin.

"The Due Process Clause protects against the use of evidence obtained from impermissibly suggestive identification procedures." *United States v. Guidry*, 406 F.3d 314, 319 (5th Cir. 2005). An identification is inadmissible if (a) "the identification

---

attorneys confirmed that there was no agreement between them to limit cross-examination.

The Court further notes that Johnson never alleged that any agreement to limit cross-examination existed—only that his counsel "could only go so far" on cross-examination. Record Document 663 at 37. Neither did Johnson explain how his counsel's cross-examination was limited. If Johnson were to make new factual allegations to that effect now, those allegations would be untimely. *See* 28 U.S.C. 2255(f); *United States v. Alaniz*, 5 F.4th 632, 636 (5th Cir. 2021) ("[T]he original filings must lay out factual allegations—not just cite cases with legal concepts—that support *both* the original and the newly-asserted claims." (emphasis added)). And even if the allegation was timely and Johnson were to now make those new factual allegations, the Court would still find that no agreement existed based on the attorneys' sworn statements.

procedure was impermissi[bly] suggestive," and (b) "the procedure posed a 'very substantial likelihood of irreparable misidentification.'" *Id.* (quoting *United States v. Rogers*, 126 F.3d 655, 658 (5th Cir. 1997)); *United States v. Honer*, 225 F.3d 549, 552 (5th Cir. 2000) ("A conviction based on an eyewitness identification at trial following a pretrial photographic identification must be set aside 'only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)).

The Supreme Court has outlined five factors courts use to determine whether an identification procedure was suggestive: (1) "[t]he opportunity to view" the suspect; (2) "[t]he degree of attention" paid to the suspect; (3) "[t]he accuracy of the description"; (4) "[t]he witness' level of certainty"; and (5) "the time between the crime and the confrontation." *Manson v. Brathwaite*, 432 U.S. 98, 114-15 (1977). If the identification was not impermissibly suggestive, the court need not analyze the likelihood of irreparable misidentification. *Guidry*, 406 F.3d at 320.

### i.  Out-of-Court Identification

Johnson argues his counsel was ineffective for failing to challenge the out-of-court photographic lineup shown by law enforcement to Martin, who was a victim of one of the January 28, 2014, armed robberies charged in the conspiracy. Record Document 629-1 at 1. During the act involving Martin, two men with guns broke into Martin's home—one in a black hoodie and one in a red hoodie—with weapons and committed a robbery. After the incident, law enforcement interviewed Martin twice. Record Document 549 at 203.

During the second interview on January 30, 2014, two days after the robbery, police officer David Bonillas ("Bonillas") presented Martin with two photo lineups. The lineups were generated using Thinkstream database, which generates a lineup of people with characteristics similar to the suspects'. *Id.* at 203-04. One of the lineups contained Johnson[13]; another lineup contained one of Johnson's codefendants. *Id.* at 204. Bonillas testified at trial that when presenting victims with a photo lineup, he gives the following instructions:

> [I] tell them the person may or may not be in the lineup. I advise them that they're under no – I can't make them, you know, choose anybody. I also advise them that their characteristics may be different and that they are under no obligation to pick anybody out of the lineup.

*Id.* at 205.

Johnson does not explain why or how the photographic lineup was impermissibly suggestive. And there is no evidence to suggest that the out-of-court photographic lineup was impermissibly suggestive. Martin had a significant opportunity to view the suspect and paid significant attention to him. She told Bonillas that the man looked her "dead in the face." Record Document 549 at 205. She also told Bonillas that she was positive of her identification. *Id.* at 205. Bonillas testified that when Martin was presented with the lineup including Johnson, she identified Johnson and told Bonillas that she was "100 percent positive . . . that he was the subject that held her at gunpoint while she was in the room." *Id.* at 205. Martin remembered the incident in great detail. *Id.* at 217. The identification occurred just two days after the incident. *Id.* at 203. Further, Bonillas's

---

[13] The lineup at issue can be found at Record Document 374-1 at 96.

testimony suggests that Martin was told she need not choose one of the individuals in the lineup. There is no evidence indicating the police made suggestions about anyone in the lineup. *See United States v. Kopacsi*, 488 F.2d 900, 903 (5th Cir. 1973).

All these factors indicate that the photographic lineup was not impermissibly suggestive. Because there was no evidence that the identification was impermissibly suggestive, the identification could be presented to the jury. *See Allen v. Estelle*, 568 F.2d 1108, 1110 n.2 (5th Cir. 1978). Johnson's counsel was not ineffective for his failure to raise the meritless argument. *See Smith*, 907 F.2d at 585 n.6.

### ii. In-Court Identification

Johnson next argues that the impermissibly suggestive out-of-court identification tainted Martin's in-court identification of him. He contends his counsel should have challenged the in-court identification based on the previous, impermissible photographic lineup.

It is true that, as with out-of-court identifications, "in-court identification[s] from a lineup may be 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *Kopacsi*, 488 F.2d at 902 (quoting *Simmons*, 390 U.S. at 384)). In other words, if there is an out-of-court identification that is impermissibly suggestive, it may give rise to the substantial likelihood of an irreparable misidentification during trial. *See id.* However, as discussed *supra*, the underlying photographic lineup was not impermissibly suggestive. Therefore, there is no way that the lineup could have impermissibly tainted the subsequent in-court identification.

Because any objection to the in-court identification would have been meritless, Johnson's counsel was not ineffective for his failure to raise the meritless argument. *See Smith*, 907 F.2d at 585 n.6.

### iii. In-Court Misidentification

Johnson also argues his counsel was ineffective for failing to challenge an in-court misidentification by Martin. He contends that when Martin was asked who shot her, she first pointed to Johnson's co-defendant Morris, then co-defendant McCain. Record Document 629 at 8. Then, the Government asked if anyone else was involved and pointed at Defendant's table. *Id.* Johnson further argues that Martin misidentified him using his previous haircuts. He contends that Martin stated that the perpetrator had an afro, which Johnson had in the photo lineup; however, he says he did not have an afro haircut at the time of the armed robbery. Record Document 629-1 at 7.

Generally, that a witness fails to identify or misidentifies a suspect during trial is not grounds for an objection but is instead an opportunity to impeach the witness's credibility on cross-examination. *See Cameron v. Vannoy*, No. 18-CV-9502, 2020 WL 2520714, at *6 (E.D. La. May 18, 2020) (rejecting defendant's argument that a positive in-court identification was "required to negate any reasonable probability of misidentification"). Credibility determinations, including those regarding witnesses' identifications are the province of the jury. *See id.*

To begin, the trial transcripts do not support Johnson's account of Martin's identification or his counsel's response. Martin testified that she was shown one or two photo lineups after the incident. Record Document 547 at 130. She said she was able to

identify the man in black, but not the man in red. *Id.* On the stand, Martin identified the man in black as defendant Morris. *Id.* at 131, 134.

The transcript also shows that Johnson's counsel *did* object when Martin identified Morris, rather than Johnson, as one of the men present at the scene. *See id.* at 145. After Martin's identification, Johnson's counsel objected to the photographic lineup:

> MR. GLASSELL:  The objection would be to the photographic lineup. Now, she has not identified him in court today.
>
> THE COURT:  Yeah, but she identified him in the lineup. That's just contradictory testimony. I mean, it's not – it's good for you so far.
>
> MR. GLASSELL:  I know, so far. But showing her the lineup that –
>
> . . .
>
> THE COURT:  All right. Thank you. Your objection is overruled.

*Id.* at 135-36.[14] Therefore, Johnson's counsel could not have been ineffective for his failure to object. His objection was overruled because it was without merit. Further, as explained *supra*, none of Martin's identifications were based on an impermissibly suggestive photographic lineup.

---

[14] On cross-examination, Martin stated that the man she had identified earlier in court (Morris) was not the same person who she identified in the lineup. Record Document 547 at 149 (lineup available at Record Document 374-1 at 96). She clarified that both the man she identified in court (who was not in the lineup) and the man she identified in the lineup were present at the robbery. *Id.* at 149-50. On cross-examination by another attorney, Martin identified Morris as the man in the red hoodie, and Johnson as the one in the black hoodie. *Id.* at 151-52. When Johnson's counsel cross-examined Martin, she confirmed her identifications of the men in the red and black hoodies. *Id.* at 152-54. She also stated that neither defendant was wearing a ski mask. *Id.* at 154. She also stated that the man with the red hoodie, not the man in the black hoodie, shot at her. *Id.* at 163.

In sum, Johnson's statutory and constitutional rights were not implicated by any potential misidentifications by the witness. Additionally, even if they were implicated, his counsel did object to the misidentification, and that objection was overruled. Johnson's counsel was not deficient, and this claim fails on the first *Strickland* prong. *See* 466 U.S. at 689.

## H.  Failure to Request Recusal

Johnson next contends his counsel was ineffective for failing to file a motion for recusal and/or for failing to raise the issue of the judge's bias on appeal. Record Document 629-1 at 4. Johnson's basis for asserting the judge was biased includes allegations that the trial judge: had particular facial expressions in reaction to witness testimony; made comments, or did not make comments, about witnesses wearing or not wearing red shirts; did not allow a witness to plead the Fifth on the stand; and, "had [his] family members harass[ed] almost everyday, getting them searched for no reason." *Id.* at 4, 34.

The constitutional right to a fair trial includes the right to trial "before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 905 (1997). "Generally, the Supreme Court has recognized two kinds of judicial bias: actual bias and presumptive bias." *Buntion v. Quarterman*, 524 F.3d 664, 672 (5th Cir. 2008). Here, Johnson alleges actual bias.[15]

---

[15] Presumptive bias exists where:

> (1) the decision maker has a direct personal, substantial, and pecuniary interest in the outcome of the case; (2) an adjudicator has been the target of personal abuse or criticism from the party before him; and (3) a judicial

Actual bias exists where a judge engages in "favoritism or antagonism such that fair judgment is impossible." *Buntion*, 524 F.3d at 673 (citing *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

"In cases where the defendant is alleging actual bias, opinions formed based on the facts at trial are rarely a basis for recusal unless they show a deep-seated, extreme favoritism or antagonism." *Id.* (citing *Liteky*, 510 U.S. at 555). "The Supreme Court [has] recognized that only in the most extreme cases would disqualification on the basis of bias be constitutionally required." *Id.* (citing *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 820-21 (1986)). "General allegations of bias or prejudice are insufficient to establish a constitutional violation." *Richardson v. Quarterman*, 537 F.3d 466, 474 (5th Cir. 2008). "[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky*, 510 U.S. at 555.

Even accepting Johnson's contentions that the trial judge reacted with facial expressions or hand gestures during trial as true, those facts do not indicate actual bias. "[T]he Supreme Court has recognized that trials are conducted by judicial officers who retain their character as human beings[.]" *Mitchell v. Dir., TDCJ-CID*, No. 20-CV-0811, 2023 WL 8629163, at *11 (E.D. Tex. Oct. 25, 2023), *report and recommendation*

---

or quasi judicial decision maker has the dual role of investigating and adjudicating disputes and complaints.

*Buntion v. Quarterman*, 524 F.3d 664, 672 (5th Cir. 2008) (quoting *Bigby v. Dretke*, 402 F.3d 551, 559 (5th Cir. 2005)). Johnson does not assert that the trial judge had any direct interest in the outcome, had been the target of personal abuse or criticism by defendants, or had a dual role of investigating and adjudicating the dispute.

*adopted*, 2023 WL 8622974 (E.D. Tex. Dec. 13, 2023). Certainly if judges' critical, disapproving, or hostile comments are not ordinarily evidence of actionable, actual bias, the facial expressions and/or gestures alleged here fall short. Further, the Court instructed the jury before its deliberations to disregard any of its reactions to testimony:

> [D]o not assume from anything [the Court] may have done or said during the trial that [the Court] [has] any opinion concerning any of the issues in this case. Except for the instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own verdict.

Record Document 351 at 3; *see also United States v. Robinson*, 87 F.4th 658, 676 (5th Cir. 2023) ("Jurors are presumed to follow instructions.").

Johnson next cites concerns with the Court's comments, or lack of comments, about witnesses wearing or not wearing red shirts. The Government established during trial that the Block Boyz are associated with the color red. Record Document 629-1 at 4. Johnson first takes issue with the fact that the Court "had nothing to say" about witness Adams's red shirt. *Id.* He then takes issue with the fact that the Court did point out that witness Jones was wearing a red shirt when the witness requested to plead the Fifth. *Id.* Johnson alleges that this showed favoritism for the Government. Record Document 663 at 34. It is unclear based on these conflicting complaints whether Johnson thought it was helpful or unhelpful to his case that the Court pointed out (or failed to point out) witnesses' red shirts.

The Court notes that it did have concerns about witnesses' decision to wear (or not wear) red because it was concerned about witness intimidation. On September 19, 2018, during a sealed discussion out of the presence of the jury, the Court discussed several concerns related to witness intimidation with the parties. First, the Court

addressed that a list of witnesses' names were released on Facebook. *See* Record Document 548 at 3. Second, the Court addressed a concern that the U.S. Marshals brought to the Court that witnesses wearing red, a "gang color" associated with the Block Boyz, may be a witness intimidation tactic. *See id.* Addressing these concerns about witness intimidation and witness safety do not indicate actual bias.

The next basis Johnson asserts for a motion to recuse is that his trial judge prevented a witness from pleading the Fifth. Record Document 629-1 at 4. This claim fails for a litany of reasons. To begin, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Andrade v. Chojnacki*, 338 F.3d 448, 455 (5th Cir. 2003). And even so, Johnson's allegations here are based on the Court's ruling as to the privilege of another, non-defendant witness, who was hostile to the Government. Jones did not mention Johnson by name one time during her testimony. *See* Record Document 555 at 177-93. His claim that the Court's ruling as to privilege for a witness who did not testify to his criminal conduct fails. As with most judicial rulings, the Court's ruling here is not evidence of any bias. In no way does the Court's handling of another, non-defendant witness's claim of privilege violate Johnson's constitutional or statutory rights.

Finally, Johnson's claim that his family was "harassed" by the Court is also without merit. Both before and during the criminal trial, the Court discussed with the parties the serious safety concerns raised by the Government regarding the physical safety of testifying witnesses, publicity of the indictment and charges, and extra security measures that would be taken in conducting the trial. Record Documents 168 at 12-13 & 239 at 2-

45

3. Johnson himself points out that during the trial, a copy of the witness list was posted to Facebook, which led to an investigation and several additional security measures. Record Document 663 at 34. The Court does not recall, nor does the record reflect, any additional procedures implemented to search the persons who entered the courtroom to observe the criminal trial. All persons entering a federal courthouse must pass through a metal detector and are subject to searches of any bags they carry with them.[16] Further, even if additional security measures were put into place, there are no facts to suggest that there was any improper motive in ensuring courtroom safety and security throughout the trial.[17]

Because none of Johnson's contentions indicate bias of the trial judge, Johnson's counsel was not ineffective for failing to raise a meritless motion for recusal. *See Smith*, 907 F.2d at 585 n.6; *Kimler*, 167 F.3d at 892.

---

[16] *What To Expect When Visiting a Courthouse*, U.S. Marshals Service, https://www. usmarshals.gov/what-we-do/judicial-security/what-expect-when-visiting-courthouse.

[17] In responding to Johnson's allegations that his family was searched, the Government notes there are no facts in the record to support this allegation. Record Document 654 at 32. The Government notes that the only complaint about searches was a codefendant's complaint to the Court on the record that her personal electronics were searched. *See id.* (citing Record Document 557 at 81). As the Court explained to that defendant when the concern was raised, searches of the defendants' personal devices were necessary to determine which defendant(s) were engaging in witness intimidation tactics. *See* Record Document 557 at 81. At the trial, a list of testifying witnesses was released on Facebook contrary to a court order. *See* Record Document 548 at 3. As a result of these intimidation efforts, the Government contacted the FBI "to determine the source of the information and how it[ was] being disseminated." *Id.*

## I.  Failure to Raise Claims of Prosecutorial Misconduct

Johnson claims his counsel was ineffective for failing to raise the issue of alleged prosecutorial misconduct with the Court. Record Document 629-1 at 6. He claims witness Antonio Walker ("Walker") was coerced into testifying based on the FBI's and/or the Marshals' threats that Walker would go to jail if he refused. *Id.* Johnson contends that he "would never [have] been convicted of the incident" if Walker had not testified. Record Document 663 at 33.

The Government correctly responds to Johnson's claims by recounting: "As this Court explained to another defendant, subpoenas are issued for witnesses who can be arrested if they do not comply." Record Document 654 at 29 (citing Record Document 557 at 82). Federal Rule of Criminal Procedure 17(g) empowers district courts to "hold in contempt a witness who, without adequate excuse, disobeys a subpoena issued by a federal court in that district." Walker was subpoenaed to testify at trial. Record Document 282-1 at 3-4. Had Walker not attended the trial, the Court would have been entitled to hold Walker in contempt. The mechanism is not punitive but rather serves as a procedural mechanism for ensuring a fair trial.

Further, "[w]hile [Johnson] may complain that the [Government] used harsh tactics in requiring that witnesses obey court subpoenas, he has not shown . . . that there is a reasonable probability that he would not have been convicted by the jury had defense counsel questioned" Walker about how, or why, he was compelled to testify. *See Spence v. Quarterman*, No. 06-CV-2392, 2009 WL 302002, at *9 (N.D. Tex. Feb. 6, 2009).

Indeed, Walker did testify that he did not wish to appear but did so based on the subpoena:

> MR. WALKER:  [T]hey had served me a subpoena saying if I don't come to court, you know, I would have to go to jail. So that's why I'm here because if I didn't come to court, I would lose my job, so I had to come here to do what I had to do.
>
> MR. GLASSELL:  So do you feel like you have a subpoena and that's why you're here?
>
> MR. WALKER:  Yes, sir.

Record Document 557 at 34-35. *Cf. Spence*, 2009 WL 302002, at *9. Johnson's argument fails because the jury *did* hear testimony from Walker that he had been compelled to testify.

In sum, ensuring compliance with a court-issued subpoena did not constitute prosecutorial misconduct. Therefore, Johnson's counsel was not ineffective for failing to raise a meritless claim of prosecutorial misconduct. *See Smith*, 907 F.2d at 585 n.6.

### J.  Ineffectiveness on Appeal

Finally, Johnson argues his counsel was ineffective for failing to raise certain grounds on appeal. Record Document 629-1 at 1. Johnson specifically argues that his attorney was ineffective for failing to raise sentencing-related issues on appeal because, by objecting during the sentencing proceeding, his attorney "gave his word" that he would raise the issue(s) on appeal. Record Document 663 at 38. Johnson also claims he gave his counsel a list of issues to raise on appeal, and his counsel did not raise those issues. *Id.* While Johnson has not submitted to the Court the list of issues he allegedly provided to his counsel, none of the grounds he raises in the instant motion have merit. Johnson's

counsel was not ineffective for failing to raise any of the meritless claims discussed herein on appeal. *See Smith*, 907 F.2d at 585 n.6; *Kimler*, 167 F.3d at 892. To the extent that other issues existed that Johnson does not name here, Johnson has failed to carry his burden of establishing deficient performance. *See Strickland*, 466 U.S. at 687. The Court considers only his contention that his attorney should have addressed issues specific to his sentencing.

Although challenges to sentencing determinations are not cognizable on a § 2255 motion, a defendant may bring a claim that their counsel rendered ineffective assistance by failing to make the argument when it was cognizable. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). Therefore, Johnson can claim his counsel was ineffective for failing to raise sentencing-related issues on appeal while those issues were cognizable.

In a letter Johnson provided to the Court, Johnson's counsel explained to him that four major issues were raised on appeal, and he explained what the outcome would be if any of those challenges were successful. Record Document 629-1 at 3. Johnson's counsel stated he "did not raise any issue regarding sentencing because [he] did not think [Johnson] would win." *Id.* During sentencing, the Court explained that it would have sentenced Johnson to more than the twenty-year maximum if it was permitted to do so; therefore, Johnson's counsel believed that even if there was a lower calculated Guideline range, Johnson would face the twenty-year maximum sentence. *Id.*

Johnson's counsel was not ineffective for failing to raise the Court's sentencing determination on appeal. Johnson proposes no reason that the Court's sentencing was wrong and should have been raised on appeal. Even so, the Court notes that Johnson's

counsel did object during his sentencing.[18] *See* Record Document 570 at 3-4. But preserving an objection does not mean that the objection has merit or that the lawyer must raise the objection on appeal to be effective. Johnson cannot meet his burden of showing he was prejudiced by his counsel's alleged failure to raise issues with his sentencing on appeal. *See Strickland*, 466 U.S. at 687.

Further, Johnson was sentenced to a term of 240 months imprisonment and three years of supervised release. Record Document 471. This is well below Johnson's Guideline range of 360 months to life. The Court was constrained in its sentencing by the maximum statutorily authorized term of imprisonment. Any attempt by counsel to raise sentencing-related issues on appeal would have been unsuccessful. At sentencing, the Court recounted the violent nature of Johnson's offenses and noted that it was constrained by the statutory maximum sentence but would impose more time if permitted to do so. Record Document 570 at 31. Therefore, Johnson was not prejudiced by his lawyer's failure to raise sentencing-related challenges on appeal, and this claim fails on the second prong of the *Strickland* test. *See* 466 U.S. at 694.

---

[18] Johnson's counsel made several objections at sentencing. He objected to: (1) the calculated offense level, arguing it was unsupported by the verdict form; (2) the grouping rules applied; (3) the level of injury assigned to Martin for the purposes of a special offense characteristic; (4) a juvenile adjudication reflected in the presentence investigation report; (5) an aggravated battery conviction, which factored into Johnson's criminal history score; and (6) the attribution of Johnson's acts to the RICO conspiracy (an objection counsel made solely to preserve the issue for appeal). *See* Record Documents 475 at 31-34 & 476. Johnson's counsel withdrew his objection to the juvenile adjudication included in the presentence investigation report. *See id.* at 17. At sentencing, the Court discussed and overruled Johnson's counsel's remaining objections and noted his objections to its rulings for the record. *Id.* at 10-21.

## **Conclusion**

For the reasons assigned herein, Johnson's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 [Record Document 629] is **DENIED** and **DISMISSED WITH PREJUDICE**. Johnson's motion to expedite consideration of his motion [Record Document 688] is **DENIED AS MOOT**.

Pursuant to Rule 11(a) of the Rules governing § 2255 proceedings for the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the petitioner. Unless a Circuit Justice or a Circuit or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeal. In this case, a certificate of appealability is **DENIED** because Johnson has failed to demonstrate a substantial showing of the denial of a constitutional right.

**THUS DONE AND SIGNED** this 14th day of March, 2025.

ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE